**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:16CR246** |
| | ) | **The Honorable Claude M. Hilton** |
| | ) | |
| **SETH AARON THORNTON,** | ) | **Sentencing Date: March 24, 2017** |
| **Defendant.** | ) | |

<u>**DEFENDANT'S POSITION ON SENTENCING FACTORS**</u>

Seth Thornton is before the Court after having entered a guilty plea to receipt of child pornography in violation of 18 U.S.C. §2252(a)(2).  A sentence of 60 months is sufficient but not greater than necessary in this case because:

- It avoids unwarranted sentencing disparities. *See* sentencing charts, pages 22-28 (highlighting *numerous* 60-month sentences from this Court in which the Guidelines range was the same or higher than Mr. Thornton's Guidelines, and which the conduct was more severe).

- Mr. Thornton has been engaged in intense treatment since ***December 2015***, well before any charges were filed in this case.  He has excelled in treatment.  *See* Def.'s Ex. 4, *Dr. Weiner Report.*

- Mr. Thornton voluntarily submitted to a polygraph examination to show he has never engaged in a contact offense, and his treatment provider indicated that he does not consider Mr. Thornton to be this type of offender.  *See id;* Def.'s Ex. 3.

- Mr. Thornton, an otherwise law-abiding, successful individual and devoted father, has lost his job, any future ability to gain meaningful employment, and his family.  He will likely not see his children for at least the next five years, and his wife is divorcing him. He is now a convicted felon, will spend years in prison, and be on the sex offender registry for a decade and a half.

- The child pornography Guidelines are not based on empirical evidence, and have been widely discredited.

- Mr. Thornton is deeply remorseful for his conduct, accepts full responsibility for his offense, and by all accounts has otherwise exceptional character.

For these reasons, among others, Mr. Thornton respectfully submits that the mandatory minimum sentence of sixty (60) months of imprisonment is sufficient but not greater than necessary to satisfy the sentencing factors. He also respectfully requests a period of supervised release of no more than five (5) years. Such a sentence is consistent with the sentences imposed by this Court in other recent child pornography cases.

In the Plea Agreement, the United States and the defendant agree to recommend to the Court that the Sentencing Guidelines suggest an offense level of thirty (30), with a corresponding range of 97-121 months (at criminal history category ("CHC") I). PSR ¶ 9 (quoting Plea Agreement). The government further agreed to recommend a sentence at the low-end of the Guidelines range. *Id*. The Presentence Investigation Report ("PSR") however, recommends an offense level of 34 after incorrectly finding that Mr. Thornton "distributed" child pornography. Mr. Thornton objects to this finding and its associated impact on the proposed Guidelines range for the reasons set forth in more detail below.

## OBJECTIONS TO THE PSR

Mr. Thornton has no objection to the narrative portion of the PSR. As to the Guidelines calculations, the parties stipulated in the Plea Agreement that the offense level should be 30, resulting in a recommended range of 97 to 121 months of imprisonment. PSR ¶ 9. The PSR however, concludes that the offense level should be 34 with a range of 151 to 188 months. *Id*. ¶ 83. Mr. Thornton objects to this calculation which erroneously includes a 2- level enhancement

for distribution of child pornography (and thus improperly deprives Mr. Thornton of a two level *downward* adjustment).

Specifically, Mr. Thornton objects to the PSR's application of a 2-level enhancement for distribution of child pornography under § 2G2.2(b)(3)(F).  PSR ¶ 28. As noted, the parties agreed in the Plea Agreement that this enhancement does not apply *because Mr. Thornton did not intend to distribute such material.*  PSR ¶ 9 (emphasis added).  As a result, the parties agreed in the Plea Agreement that a further 2-level decrease applies under § 2G2.2(b)(1), resulting in a Guideline range of 97 to 121 months (offense level 30 at CHC I).  *Id.*

The PSR wrongly applies the 2-level distribution enhancement because of Mr. Thornton's use of peer-to-peer software to download the child pornography files.  The PSR's rationale is that peer-to-peer software is a file-sharing program: when a person uses such software to access the files of others, he typically must reciprocate and allow others to access his own files.  PSR Addendum.  However, the PSR does not cite sufficient facts to establish by a preponderance of the evidence that Mr. Thornton knowingly and purposefully allowed others to have access to his files, or intended others to have access to his files.[2]  *See United States v. Layton*, 564 F.3d 330, 335 (4th Cir. 2009) (finding the enhancement applied because a defendant created a shared folder that he knew others could access to download his child pornography files).  The facts that the PSR does cite certainly establish that a law enforcement officer was able to download files from Mr. Thornton's computer through the peer-to-peer program.  Those

---

[2] The burden falls to the Probation Officer since the government has agreed not to seek the enhancement.  PSR ¶ 9 (citing to Plea Agreement).

3

facts, however, do not prove by a preponderance of the evidence that Mr. Thornton knowingly and intentionally distributed child pornography when using the peer-to-peer software.[3]

The Fourth Circuit has stated that "inferring an expectation of receipt from mere use is unsupported by the operation of an open file-sharing program because 'freeloading' is possible." *United States v. McManus*, 734 F.3d 315, 321 (4th Cir. 2013) (citing *United States v. Vadnais*, 667 F.3d 1206, 1209 (11th Cir. 2012)).  While the PSR is correct that use of peer-to-peer software *can* support a distribution enhancement, courts have held that there still must be evidence that an individual defendant knowingly intended to use the peer-to-peer software to allow others to access the files on his computer. *Id.*  Indeed, numerous cases in this Court have involved the use of peer-to-peer software without applying the distribution enhancement.  *See United States v. Edwin Torres-Feliu*, 1:10CR188 –CHM; *United States v. Jack Cole*, 1:09CR233-LMB; *United States v*. John Richard Elinski, 1:14CR431- LMB; *United States v. Jose Juan Fernandez*, 1:11CR229 – JCC; *United States v. Jason Waynes Jones*, 1:09CR470-LMB; *United States v. Michael McCleskey*, 1:11CR0483 -AJT; *United States v. Richard Robinson*, 1:15CR329 – LMB; *United States v. Rodney Russel*, 1:14CR336-GBL; *United States v. Milap Shah*, 1:14CR282-AJT; *United States v. Phillip Daniel Shuffield*, 1:09CR403 –JCC.

Peer-to-peer software by default is a file-sharing program.  But there is a vast difference between a person who uses it to view child pornography, versus a person who uses it for the purpose of distributing the files.  Since virtually all child pornography offenders use peer-to-peer

---

[3] The Sentencing Commission itself notes that "[m]any P2P file-sharing networks are wholly 'open' in that an individual downloads the software and then automatically: . . . (2) shares any file with any other user. . . . Individuals using open P2P have no, or limited, ability to 'block' other users or select other users with whom to share files." *See* note 7 *infra.*, Report to Congress: Federal Child Pornography Offenses, U.S. Sentencing Commission (2012) at A-6.

software to commit the offense, the enhancement would be meaningless, if so narrowly interpreted, because it would apply to all offenders.

Furthermore, the PSR's facts are insufficient to prove that Mr. Thornton knowingly intended to distribute the files.  Indeed, the government concedes as much given its statement in the Plea Agreement that a 2-level reduction is appropriate "because the offense was limited to receipt or solicitation of child pornography and the defendant did not intend to traffic or distribute such material."  PSR ¶ 9 (quoting the Plea Agreement).  To the contrary, Mr. Thornton qualifies for a two level *downward* adjustment under §2G2.2(b)(1), because his conduct was limited to the receipt of child pornography and he did not knowingly intend to traffic in, or distribute such material.  In fact, Mr. Thornton actively tried to avoid any distribution.  As the Statement of Facts indicates, Mr. Thornton had a program on his computer to specifically (and he believed, automatically) move the completed files out of the shared folder.  Thus, while Mr. Thornton used the peer-to-peer software to receive and view child pornography, he, through proactive measures, did *not* use the software to knowingly distribute any of the files.  Obviously, this program did not operate as Mr. Thornton believed because the Agent was able to download child pornography from Mr. Thornton's computer.  Nevertheless, Mr. Thornton did not knowingly or intentionally distribute child pornography.  The facts support this downward adjustment and the government properly agreed to recommend this two level reduction to the Court.  *See id*.

Accordingly, Mr. Thornton respectfully requests that the Court follow the agreement of the parties and find that a distribution enhancement under § 2G2.2(b)(3)(F) does not apply, and that a further 2-level reduction does apply under § 2G2.2(b)(1).

5

**BACKGROUND**

If one were to encounter the Thornton family at a neighborhood picnic, a school function, or during an evening out, the scene would be picturesque – the tall, attentive Mr. Thornton, his beautiful wife, and their two lively children.  As one watched further, one would see a dedicated father, engaging his son and daughter, gently explaining new concepts, and extending a firm hand as they explore the world.  One would see a devoted husband who was up long before his wife to prepare school lunches, make the coffee, and pack satchels before the day begins.  *See* Def.'s Ex. 2, *Letter from Nia Thornton* ("Every morning, till today, Seth wakes up before the rest of the family packing fresh lunches for the kids and making breakfast, and as a sweet gesture, he makes coffee for me every morning since we [were] married and brings it to me.").  One would see this successful defense contractor, and perhaps even envy him.

But not now.  This picturesque scene is no longer.  It is broken beyond repair.  On October 13, 2015, police raided Mr. Thornton's home and discovered evidence of Mr. Thornton's untreated mental health issues that led him to view child pornography.  And at that moment, everything Mr. Thornton had done right in his life was destroyed by his wrong.

Even those closest to Mr. Thornton were shocked by this event.  His sister-in-law wrote, "I cannot help but to continue to find this [offense] as extremely uncharacteristic of him." Def.'s Ex. 2, *Letter from Thea Khitarishvili*.  But in that moment, Mr. Thornton did not sit idly or immerse himself in self-pity.  Mr. Thornton almost immediately began treatment with Dr. Ronald Weiner, who has advised the Court, that "Mr. Thornton has progressed in treatment to date, and appears open to the treatment process. He is prepared for each individual session and has worked hard on all assignments provided to him."  *See* Def.'s Ex. 4 at 3.

6

Treatment with Dr. Weiner has helped immeasurably, and Mr. Thornton has slowly been able to rebuild himself.  However, the pieces of his broken family and prior life are forever shattered.  He lost his job, and most likely any prospect of future meaningful employment.  Mr. Thornton's marriage is ruined, and it unlikely that he will see his children once he is imprisoned. He has surrendered everything he has to his wife in their separation agreement, and will be tethered to the confines of a sex offender registry for the next fifteen years.  This is the Mr. Thornton – the broken, but healing, Mr. Thornton – who now stands before this Court to await judgment in his case.

## ARGUMENT

Mr. Thornton respectfully requests that, regardless of how the Court rules on his Guidelines objection, it impose a below-Guidelines sentence of no more than 60 months of imprisonment.  Such a sentence is sufficient, but not greater than necessary, given his lack of any criminal history, the fact that he has not had any improper contact with a minor or engaged in any other sexually dangerous behavior, and because the likelihood that he will re-offend is negligible.  Such a sentence also is appropriate because the child pornography guideline has been widely criticized by courts and the Sentencing Commission alike, and is thus entitled to little deference.  Consideration of the other sentencing factors, including sentences imposed in other recent child pornography cases, further support the imposition of a 60 month sentence.

## I.      The Child Pornography Guideline and Resulting Guideline Range Are Entitled To Little Deference.

### A.      The Sentencing Factors and Guidelines

The overriding principle and basic mandate of 18 U.S.C. § 3553(a) requires district courts to consider a number of factors in order to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes of sentencing as set forth in the statute.[4]

The Guideline range, as one of many factors, is not binding.  The Supreme Court has held that a defendant's Guideline range is truly advisory and that this Court is free to impose a sentence below the range.  *See, e.g.*, *Gall v. United States*, 128 S. Ct. 586, 602 (2007) ("the Guidelines are only one of the factors to be considered when imposing sentence"); *see also Rita v. United States*, 551 U.S. 338, 351 (2007) (noting that, after consideration of § 3553(a) factors and the "sufficient but not greater than necessary" requirement, a sentencing court may find that the case falls outside of the "heartland" contemplated by Guidelines, or that "the Guideline sentence itself fails properly to reflect § 3553(a) considerations," or that "the case warrants a different sentence regardless").

As the Supreme Court has observed, a guideline's strength depends on whether the Commission has acted in "the exercise of its characteristic institutional role."  *Kimbrough v. United States*, 552 U.S. 85, 89 (2007).  This role has two basic components:  (1) reliance on

---

[4] These factors include: (a) the nature and circumstances of the offense and the history and characteristics of the defendant; (b) the kinds of sentences available; (c) the advisory guidelines range; (d) the need to avoid unwarranted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and providing the defendant with needed educational or vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. § 3553(a).

8

empirical evidence of pre-Guidelines sentencing practice;[5] and (2) review and revision in light of judicial decisions, sentencing data, and comments from participants and experts in the field. *Rita*, 551 U.S. at 349-350.  In that institutional role, the Commission "has the capacity courts lack 'to base its determination on empirical data and national experience guided by a professional staff with appropriate expertise.'" *Kimbrough*, 552 U.S. at 109 (citation omitted).

Specifically, the Supreme Court has recognized that where the Commission fails to fulfill its role by premising a guideline on considerations other than empirical evidence and the § 3553(a) factors, the sentencing court may be inclined to reject the Guidelines.  Thus, in *Kimbrough,* the Supreme Court held that sentencing judges may disregard the Guidelines' sentencing recommendations for crack cocaine offenses based on their disagreement with the crack/cocaine sentencing disparity contained in the Guidelines.  552 U.S. 85, 91 (2007).  The decision was motivated by the Commission's failure to utilize empirical evidence in enacting the crack cocaine sentencing guidelines.  *See Kimbrough*, 552 U.S. at 109-10 (holding that where Guidelines are not the product of "empirical data and national experience," it is not an abuse of discretion for a sentencing court to conclude that the recommended sentence fails to achieve the purposes of sentencing set forth in Section 3553(a), even in "a mine-run case"); *see also Gall*,

---

[5] In the Commission's initial development of the Guidelines, it took "an empirical approach that used as a starting point data estimating pre-guidelines sentencing practice."  United States Sentencing Commission, *Guidelines Manual*, Ch. 1, Part A, § 1.3 (Nov. 2015).  The Commission "analyzed data drawn from 10,000 presentence investigations, the differing elements of various crimes as distinguished in substantive criminal statutes, the United States Parole Commission's guidelines and statistics, and data from other relevant sources in order to determine which distinctions were important in pre-guidelines practice."  *Id.*  This empirical approach has helped the Commission "resolve practical problems by defining a list of relevant distinctions" among cases, and those "relevant distinctions not reflected in the guidelines probably will occur rarely and sentencing courts may take such unusual cases into account by departing from the guidelines."  *Id.*

552 U.S. at 46 n.2 ("Notably, not all of the Guidelines are tied to this empirical evidence.")

(citing *Kimbrough*, 552 U.S. 85).

**B. The Child Pornography Guideline Does Not Reflect Empirical Considerations or the Institutional Role of the Sentencing Commission**.

As this Court well knows, the current child pornography guideline, U.S.S.G. § 2G2.2, has been strongly criticized, including by the Sentencing Commission itself, because of its lack of empirical basis and failure to distinguish among offenders in terms of culpability and dangerousness. Like the crack-cocaine guideline, the child pornography guideline was not born, of sound research or empirical study, but instead formulated primarily of Congressional mandates. *See generally* Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines* (January 1, 2009) (hereinafter "Deconstructing the Myth").[6]

As set forth below, the Guideline ranges for child exploitation offenses increased sharply over a period of ten-plus years in response to a series of statutory directives. *See* U.S.S.G. App. C, Amends. 537 and 538 (Nov. 1, 1996), 592 (Nov. 1, 2000), 615 (Nov. 1, 2001), 651 (Oct. 27, 2003), and 664 (Nov. 1, 2004). From 1987 through 1990, the initial base level under § 2G2.2 remained at level 13 for offenses involving transporting, receiving, or trafficking in child pornography. Simple possession of child pornography was not yet a crime. *See* Deconstructing the Myth at 4. In 1990, Congress criminalized the possession of child pornography, raised maximum possible penalties, and introduced mandatory minimum sentences for repeat offenders. *See* Pub. L. 101-647, Title III, § 323(a), (b), Nov. 29, 1990, 104 Stat. 4818-19. The resulting

---

[6] Available at http://www.fd.org/docs/Select-Topics---sentencing/child-porn-july-revision.pdf (last accessed Feb. 14, 2017).

guideline assigned a base offense level of 10 to the offense of possession of child pornography. *See* Deconstructing the Myth at 5-6.

Then, from 1991 to 2003, Congress enacted a series of amendments to the Guidelines that drastically increased the ranges and led to a more than 400% increase in the mean sentences for child pornography offenders.  As detailed in greater length in the Stabenow Report, the most draconian changes to the guideline occurred as a result of the PROTECT ACT of 2003, which was enacted as the rate of downward departures in child pornography cases increased.  *See* U.S. Sentencing Comm'n, Report to Congress: Child Pornography Offenses (December 2012) at 123 ("U.S.S.C. 2012 Report").[7]  In that Act, Congress, in an unusual move, directly amended the Guidelines by drafting guideline text.  *See* Deconstructing The Myth at 22.  "In the past, Congress often . . . issue[d] directions to and requests for study from the Commission, but left it to the Commission to craft specific Guideline text.  This time, Congress completely ignored the expert role the Sentencing Commission was designed to play, cut the Commission out of the process entirely, and directly wrote Guideline text to its own specifications."  Steven L. Chanenson, *Hoist with Their Own Petard?*, 17 Fed. Sent'g Rep. 20, 23 & nn. 54-57 (2004). Furthermore, "Congress acted . . . without giving either the Judicial Conference or the Sentencing Commission a fair opportunity to consider and comment on the direct amendment." Deconstructing The Myth at 22.

---

[7] *Available at*
http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_Testimony_and_Reports/ Sex_Offense_Topics/201212_Federal_Child_Pornography_Offenses/Full_Report_to_Congress.p df (last accessed Feb. 14, 2017).

The legislation directly mandated new enhancements such as an enhancement of up to 5 levels based on the number of images involved, and a 4-level enhancement for sadistic or masochistic images for possession offenders. *See id*. at 20-24. In the wake of these statutory mandates and empirically unsupported amendments, the mean sentences in child pornography cases increased dramatically, from just 20.59 months of confinement in 1997, to 91.3 months in 2007, an increase of 443%. *See id*. at 2.

On December 30, 2003, and January 14, 2004, the Commission published for notice and comment its own proposed amendments to revise the child pornography guideline. *See id.* (citing 69 Fed. Reg. 2, 169 (Jan. 14, 2004) (Notice of Proposed Amendments to Sentencing Guidelines, Policy Statements, And Commentary); 68 Fed. Reg. 75, 340 (Dec. 30, 2003)). In an attempt to reconcile the provisions of the PROTECT Act, the Commission eventually adopted an amendment raising the base offense levels – for possession from 15 to 18, and for trafficking, receipt, and distribution related offenses from 17 to 22. *See* U.S.S.G. App. C, Amendment 664. The Commission's reason for re-structuring the offense characteristics of § 2G2.2 was solely to ensure that the Guidelines range matched or exceeded the newly increased mandatory minimums and rules put forth in the PROTECT Act, rather than to serve the statutory purposes of sentencing overall. *See* Amendment 664 ("The PROTECT Act established five year mandatory minimum terms . . . as a result of these new mandatory minimum penalties . . . the Commission increased the base offense level for these offenses. . .").

As the arbitrary nature of the child pornography guideline has become more and more apparent, the judicial and legal communities have approached a consensus that the § 2G2.2 guideline is broken. Numerous courts have criticized the guideline in its current form, and many

12

courts (including Courts of Appeal in the First, Second, Third, Sixth, Seventh and Ninth Circuits) have endorsed the notion that a district court may follow *Kimbrough* and properly find that the child pornography guideline does not exemplify the Commission's characteristic institutional role of basing its determinations on empirical data and national experience.[8]

Most recently, Senior United States District Judge Jack Weinstein imposed a non-custodial sentence of seven years of supervised release in a possession of child pornography case where the Guidelines range was 78 to 97 months. *United States v. R.V.*, 2016 WL 270257 (E.D.N.Y. Jan. 21, 2016). In that case, the defendant downloaded child pornography using peer-to-peer file-sharing software (like Mr. Thornton) and (unlike Mr. Thornton) engaged in video chats with minor females while posing as a teenage boy. In his lengthy opinion, Judge Weinstein wrote that "numerous courts . . . have recognized that the current child pornography Guidelines do not adequately reflect the impact of the changing technological landscape on an individual's

---

[8] *See United States v. Stone*, 575 F.3d 83, 89-90 (1st Cir. 2009) ("[O]ur precedent has interpreted *Kimbrough* as supplying this power even where a guideline provision is a direct reflection of a congressional directive," including the career offender and child pornography guidelines); *United States v. Dorvee*, 616 F.3d 174, 188 (2d Cir. 2010) (*Kimbrough's* holding that "it was not an abuse of discretion" for a district court to disagree with the crack guidelines "because those particular Guidelines 'do not exemplify the Commission's exercise of its characteristic institutional role'... applies with full force to § 2G2.2"); *United States v. Grober*, 624 F.3d 592, 600-01 (3d Cir. 2010) ("the Commission did not do what 'an exercise of its characteristic institutional role' required – develop § 2G2.2 based on research and study rather than reacting to changes adopted or directed by Congress"); *United States v. McNerney*, 636 F.3d 772, 775-76 (6th Cir. 2011) (finding that § 2G2.2 was "fundamentally different" from most other Guidelines because the Commission "did not use [an] empirical approach in formulating the Guidelines for child pornography"); *United States v. Halliday*, 672 F.3d 462, 474 (7th Cir. 2012) (district courts are "at liberty to reject *any* Guideline on policy grounds," and district court has direction to disagree with the child pornography guidelines); *United States v. Henderson*, 649 F.3d 955, 959-60 (9th Cir. 2011) ("[T]he child pornography Guidelines were not developed in a manner 'exemplify[ing] the Commission's exercise of its characteristic institutional role'").

level of culpability," *id.* at \*38, and that "disagreement with the current sentencing scheme has convinced an increasing numbering of judges to impose sentences below those recommended by the Guidelines in non-production cases." *Id.* at \*42; *see also id.* at \*43 (citing cases).

Because of the widespread criticism, the Sentencing Commission undertook a review of the child pornography guideline.  In December 2012, the Commission issued a report to Congress regarding its review of child pornography sentencing practices.  Notably, this report requested a complete overhaul of the child pornography guideline.  *See* note 7 *supra*, U.S.S.C. 2012 Report at 321 ("the current sentencing scheme results in overly severe guideline ranges for some offenders based on outdated and disproportionate enhancements ….").  That report also noted the trend of courts imposing below-Guidelines sentences in child pornography cases: "The rate of non-production cases in which sentences were imposed within the applicable guideline range steadily fell from its high point in fiscal year 2004, at 83.2 percent of cases, to 40.0 percent of cases in fiscal year 2010, and to 32.7 percent of cases in fiscal year 2011."  *See United States v. R.V.*, 2016 WL 270257 at \*43 (quoting the 2012 Report).

Finding that "the existing sentencing scheme in non-production cases no longer adequately distinguishes among offenders based upon their degrees of culpability," the Commission stated its view of the guideline in no uncertain terms:

> [T]he current non-production guideline warrants revision in view of its outdated and disproportionate enhancements related to offenders' collecting behavior as well as its failure to account fully for some offenders' involvement in child pornography communities and sexually dangerous behavior.  The current guideline produces overly severe sentencing ranges for some offenders, unduly lenient ranges for other offenders, and widespread inconsistent application.  A revised guideline…would better promote proportionate sentences and reflect the statutory purposes of sentencing.

U.S.S.C. 2012 Report, at *ii* (Executive Summary).

14

**C.      The Guideline Enhancements Result in Sentences Disproportionate to Culpability.**

As recognized by the Sentencing Commission, apart from Congress's atypical involvement in its formulation, the deep flaw in the child pornography guideline is that it fails to distinguish among defendants in any meaningful way, instead drastically increasing the sentencing range for *all* offenders.  Significant technological changes over the last few decades have changed the offense conduct of the average offender, and "enhancements that were intended to apply only to certain offenders who committed aggravated child pornography offenses are now being applied routinely to most offenders."  U.S.S.C. 2012 Report at 313.

Indeed, four out of the six possible upward enhancements under § 2G2.2  – all four of which apply to Mr. Thornton and together account for 13 of his offense levels – "now apply to the typical non-production offender": § 2G2.2(b)(2) -- depiction of prepubescent minors (96%); § 2G2.2(b)(4) -- sexually explicit (sado-masochistic) images (74%); 2G2.2(b)(6) -- use of a computer (96%); and § 2G2.2(b)(7) -- 600 or more images (69%).  U.S.S.C. 2012 Report at 316. The four enhancements that apply in these majority of cases, including here, increase Mr. Thornton offense level by 13 levels, and lead to a highly inflated range of 97 to 121 months.  *See U.S. v. Dorvee*, 616 F.3d at 186-187 (finding that a "first-time offender is therefore likely to qualify for a sentence of at least 168 to 210 months, rapidly approaching the statutory maximum, based solely on sentencing enhancements that are all but inherent to the crime of conviction"). Without those enhancements, Mr. Thornton's Guidelines range would be 30-37 months.

Apart from enhancements, Mr. Thornton Guidelines range is also affected by the high base offense level of 22 for receipt offenses (18 U.S.C. § 2252(a)(2)), which is 4 levels higher than the base offense level for the virtually indistinguishable offense of possession of child

pornography (18 U.S.C. § 2252(a)(4)), and the mandatory minimum sentence of five years.  As the Sentencing Commission itself noted as early as 1996, "there appears to be *little difference in the offense seriousness between typical receipt cases and typical possession* cases.  Indeed, all material that is possessed must at some point have been received (unless it was produced, in which case the defendant would be sentenced under the more severe production guideline)."  Commission's 1996 Report to Congress at 11 (emphasis added).  The Commission further stated, "For similar reasons, the Criminal Law Committee of the Judicial Conference recently has *recommended that Congress remove the statutory mandatory minimum penalty for receipt* because "there is no meaningful difference between receipt [and] possession." U.S.S.C. 2012 Report at 326-27 (emphasis added).  The reason is based on the change in circumstances – prior offenses were mostly committed through the postal service or other tangible means, whereas now, the offense occur almost exclusively through the internet.  *Id.*  Thus, the Commission noted, "the rationale for categorically punishing receipt in the same manner as distribution — and more harshly than possession — appears less compelling today than it did in the early 1990s."  *Id.*

The arbitrary mandatory minimum five-year sentences results in inconsistent charging practices throughout the United States.  For example, Judge Weinstein was *able* to impose a non-custodial sentence because, even though the conduct was worse than Mr. Thornton's, Judge Weinstein's defendant was not charged with a mandatory minimum offense.  *United States v. R.V.*, 2016 WL 270257.  This disparity is attributable to nothing more than a simple difference in policy between the two United States' Attorney's offices.  Indeed, the Commission has recognized this problem as well, stating, "The Commission's special coding project of fiscal year

16

2010 non-production child pornography cases found that there were inconsistent charging practices that resulted in significant unwarranted sentencing disparities among offenders charged with receipt and similarly situated offenders charged with possession"  U.S.S.C. 2012 Report at 329.

Given the "irrationality" of the child pornography guideline, Mr. Thornton's Guidelines range should not be considered a valid measure of his culpability or what the appropriate sentence should be in this case.  Instead, the sentencing determination in this case should be based on the remaining § 3553(a) factors and that statute's mandate that the Court impose the least amount of incarceration necessary to achieve the goals of sentencing.   As set forth below, given Mr. Thornton's personal history and post-offense behavior, and the sentences imposed by this Court in other child pornography cases, a sentence of 60 months is appropriate.

## II.    Application of Sentencing Factors Pursuant to 18 U.S.C. § 3553(a)

### A.    Personal History & Characteristics of Seth Thornton

 Mr. Thornton was raised by his two parents in Maine, along with his older and younger brother.  His parents were loving, supportive, and attentive – qualities that Mr. Thornton soon came to embody as well.  Mr. Thornton's older brother was born with Down's Syndrome, and Mr. Thornton, quickly became his protector and translator.  *See* Def.'s Ex. 2, *Letter from Martha Thornton*, ("Although younger by 18 months, it didn't take long for Seth to be as big as his older brother and to be the one who looked out for him. He was a dedicated translator for his brother whose speech was very difficult to understand. It was always Seth who could understand and ensured that we knew what Adam was saying or needed. There could have been no better

17

'little' brother for Adam than Seth. Seth has always had a very special relationship with his brother Adam.").

Growing up, Mr. Thornton worked hard and excelled.  He found success in sports and academics, but never lost his humility and generosity towards others.  *See* Def.'s Ex. 2 (describing Mr. Thornton as kind, generous, understanding, modest, devoted, loyal, thoughtful, and hardworking, and noting examples of when he provided a room in his house for a friend and his brother).  Mr. Thornton's friend noted this specifically, stating, "[Seth] is humble and speaks softly but is so very bright and almost always has something to teach me whenever we are together." *Id.*, *Letter from Khoa Tran.*

Additionally, Mr. Thornton's sister-in-law wrote to the Court, "We all know Seth as a man of integrity and honesty, who is a community-minded individual and who is at ease putting the needs of others before his own." Def.'s Ex. 2, *Letter from Thea Khitarishvili.*  Mr. Thornton's friend advised the Court that Seth "has always shown an unwavering commitment to his family. He did everything he could to ensure that they never wanted for anything even at personal sacrifice." *Id.*, *Letter from Rushi Shah.*  Mr. Thornton's other sister-in-law noted that "[o]ne quality that really differentiates Seth is his attitude to always put the needs of others before his own." *Id., Letter from Luisa Khitarishvili.*

Unfortunately, Mr. Thornton struggled with alcohol abuse most of his adult life, although, he achieves sporadic remissions and it has not interfered with his success.  Prior to marrying, Mr. Thornton drank heavily.  Upon meeting his wife, his alcoholism waned.  His wife did not approve of his excessive drinking, and he learned to curb his behavior.  In 2012, Mr. Thornton experienced a temporary relapse, but again was able to achieve remission up until the

time the charges were filed in this case.  Since the charges in this case, the stress of the situation has caused Mr. Thornton to again drink excessively.  He struggles to control it, and has never engaged in any type of formal substance abuse.  *See* PSR ¶56.

Mr. Thornton's most important role in life is being a father.  His wife wrote to the Court, "Throughout their childhood, Seth has devoted most of his spare time to [his children's] needs and development, reading to them every day, teaching them basic life skills, biking or playing a ball game and ensuring that their needs are met to the best of his ability."  Def.'s Ex. 2, *Letter from Nia Thornton.*  As his friend explained to the Court, "[t[here is nothing more important to Seth than his beautiful daughter and son. And here is where I have learned so much from him. He is immensely patient with them and actually talks *with* them instead of *to* them. He cares about what they have to say instead of keeping a one-way conversation. In return, his kids shower him with their love; they can't help but check in and jump on their dad every hour or two whenever our families are together."  *Id.*, *Letter from Khoa Tran.*

Mr. Thornton is humiliated, ashamed, and remorseful for having engaged in this conduct. *See id.*, *Letter from Nia Thornton*, (" Since this tragedy was unveiled, Seth has cried more than any single person I've ever known.  I know he feels deep sadness and sorrow for what he has done, and what he has put his family and friends through.").  His therapy has allowed him to empathize with the victims of his offense in a way that causes deep pain, and a strong desire to right his wrongs.  *See* Def.'s Ex. 1; Def.'s Ex. 4 at 3, *Letter from Dr. Weiner* ("Your client has come a long way in developing the insight and knowledge that his actions were egregious, and not in keeping with the man that he says he wants to be. He recognizes that he needs to change and has been diligent in working in treatment to become an honorable man who no longer lives a

double life involving any form of pornography."); Def.'s Ex. 2, *Letter from Nia Thornton*,

("[Seth's] greatest desire is to recover from this experience and become the man that he always

should have been.  I believe he has made great progress thus far and by continuing working on it,

he will ultimately accomplish the change.").

### B.     Nature of the Offense

The nature of the offense is straightforward: Mr. Thornton downloaded and viewed

videos and images of child pornography using peer-to-peer software.  He offers no excuses for

his conduct.

Mr. Thornton readily acknowledges that in viewing these files, he did not think of the

victims and he disassociated the images from the harm they caused.  *See* Defendant's Letter to

the Court ("I would like to reiterate my deepest apologies to those victims of exploitation, whose

original victimization was the origin of the materials I downloaded. This is something I would

have never tolerated had it been my own children, and I am forever deeply sorry that I may have

in any way extended their grief and pain.").  He has expressed true remorse and shame for his

misconduct – to his family, to Dr. Weiner, and to this Court.  He admitted his guilt, has not

engaged in any further illicit conduct since his arrest, and has diligently attended treatment

sessions.  He hopes to continue this treatment.

As pernicious as the offense is, Mr. Thornton is not before the Court for having any

inappropriate or sexual contact with a minor, or for the production of or active distribution of

child pornography.  In fact, as he reported to Dr. Weiner during his psychological evaluation,

and as he also confirmed through a polygraph examination, Mr. Thornton has never touched a

child inappropriately and has never had any desire to touch a child sexually.  *See* Def.'s Ex. 3, *Polygraph examination*

To the extent the Government seeks to rest on the number of images in this case as the basis for its sentencing request, we ask the Court to consider the following.  First, the large number of images in this case is a direct result of amount of time the conduct occurred, (how long his mental health issues went untreated) not because Mr. Thornton was intent on hoarding large numbers of files.  In other words, offenders who are caught sooner have fewer images, but the timing of law enforcement intervention is not a matter of culpability, it's a matter of luck, and it does not translate to a higher culpability level for Mr. Thornton in this case.  *See* Def.'s Ex. 4 at 4, *Report from Dr. Ronald Weiner* ("I do not consider Mr. Thornton to be a high end offender involved with other pedophilic individuals or in trading child pornography to amass a collection. He was an isolated offender whose use of pornography had become increasingly more problematic over time.").

Second, the number of images has not been a prevailing factor when sentencing defendants in this Court.  In fact, this Court heard the case of *United States v. Edwin Torres-Feliu*, 1:10CR188-CMH.  In that case, the defendant amassed the **largest collection of CP in Alexandria Division at the time** and was sentenced to 72 months.  *See United States v. Edwin Torres-Feliu*, 1:10CR188-CMH, ECF No. 22 at 3. As such, Mr. Thornton's Sentence should be below 72 months.

## C.    The Need To Avoid Unwarranted Sentencing Disparities

A sentence of 60 months is further supported by recent sentences imposed by this Court in child pornography and other child exploitation cases.  For example, this Court imposed a 60-

month sentence for Joshua Myers, a child pornography offender and elementary school teacher who, on his school issued laptop engaged in discussions with undercover about acts with underage boy, traded files on the network, and participated in online chats with at least 40 individuals about sex with children and grooming children to be sexually abused – the type of conduct that Mr. Thornton completely lacks in this case. *See United States v. Joshua Myers*, 1:11CR327-CMH, ECF No. 44 at 4.  Joshua Myer's Guidelines were 151-188, the Government requested a sentence within the Guidelines and this Court imposed a sentence of 60 months. *See also United States v. Jeremiah Trujillo,* 1:13CR479-TSE (imposing a 60-month sentence for a defendant who distributed child pornography to a 16-year old boy).  Having direct sexual communications with a minor and distribution of child pornography to a minor is arguably more serious and presents a greater risk of danger than Mr. Thornton's receipt of child pornography. Thus, a sentence of 60 months would be avoid an unwarranted disparity.

Other cases in which this Court imposed a below-Guidelines sentence include the following:

| Last Name, First Name | Case No./ Judge | Offenses/ Description of Offense | Disposition/Guidelines and Gov't & Def's Positions on Sentencing | Sentence |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| **FISH Jr., Kenneth** | 1:12CR214 CMH | Receipt of Child Pornography | Guilty Plea Guidelines: 151-188 Months OL: 34 (Defense argued OL is 30) CHC: I<br><br>Gov't requested a "significant term of incarceration" and at least 15 years SR. | 72 BOP, 10 years SR<br><br>Below GL Sentence (Even with an OL of 30) |
| **TORRES-FELIU, Edwin**<br><br>***Largest collection of CP in Alexandria Division at the time*** | 1:10CR188 CMH | Receipt of Child Pornography | Guilty plea Guidelines: 97-121 Months OL: 30 CHC: I<br><br>Gov't requested "significant level of imprisonment" and 10 years SR. | 72 Months BOP, 5 years SR<br><br>Below GL Sentence |
| **MYERS, Joshua**<br><br>***-Engaged in discussions with undercover about acts with underage boys***<br><br>***-Traded files on the network***<br><br>***-Participated in online chats with at least 40 individuals*** | 1:11CR327 CMH | Receipt of Child Pornography | Guilty Plea Guidelines: 151-188 OL: 34 CHC:  I<br><br>Gov't requested a sentence within the guidelines. | 60 Months BOP, 5 yrs SR |

23

| **MAHONEY, Shawn** | 1:08CR268 CMH | Distribution of Child Pornography | Guilty Plea Guidelines: 121-151 Months OL: 32 CHC: I<br><br>Gov't requested sentence within guidelines range + 20yrs SR. | 70 Months BOP, 15 yrs SR<br><br>Below GL Sentence |
|---|---|---|---|---|

In these cases listed above, the sentences ranged from 60 months to 72 months and the Guidelines ranges for each were almost all significantly higher than Mr. Thornton's 97-121 months Guidelines range. Additionally, for all these cases, the Government requested either a "significant sentence" or a sentence within the (higher) Guidelines range. In Mr. Thornton's case, the Government requests a sentence at the low end of the range of 97 months. **Thus, it would create a disparity to sentence Mr. Thornton to higher than 60 months, given that these other defendants who were sentenced similarly, had *higher Guidelines ranges*, and a *higher sentencing request from the Government* than in this case.**

Additionally, numerous other defendants in this Court have received sentences of 60 months for the same offense.

| **ARNOLD, Patrick** | 1:12CR406 LMB | 18 U.S.C 2252(a)(2)<br><br>Receipt of Child Pornography | Guilty Plea Guidelines: 151 to 188 Months OL: 34 CHC: I<br><br>Gov't conceded that guideline range may overstate the appropriate punishment and that | 60 Months BOP, 5 years SR<br><br>Below GL Sentence |
|---|---|---|---|---|

| | | | history & characteristics support below-guidelines sentence. | |
|---|---|---|---|---|
| **COLE, Jack** | 1:09CR233 LMB | 18 U.S.C 2252(a)(2)<br><br>Distribution of Child Pornography | Guilty Plea<br>Guidelines: 97-121 Months<br>OL: 30<br>CHC: I<br><br>Gov't requested "substantial period of incarceration" to include a minimum of ten years SR. | 60 Months BOP, 10 years SR<br><br>Below GL Sentence |
| **CROSBY, William David** | 1:12CR442 GBL | 18 U.S.C 2252(a)(2)<br><br>Receipt of Child Pornography | Guilty Plea<br>Guidelines: 121-151 Months<br>OL: 32<br>CHC: I<br><br>Gov't requested sentence at low end of the Guidelines range. | 60 Months BOP, 5 years SR<br><br>Below GL Sentence |
| **DE HARO, Louis Lope** | 1:08CR314 JCC | 18 U.S.C. 2252A(a)(2) and 18 U.S.C. 2256(8)(A)<br><br>Receipt of Child Pornography | Guilty Plea<br>Guidelines: 97-121 Months<br>OL: 30<br>CHC: I<br><br>Gov't requested sentence within guidelines range + 20 yrs SR | 60 Months BOP, 15 years SR<br><br>Below GL Sentence |
| **ELINSKI, John Richard** | 1:14CR431 LMB | 18 U.S.C 2252(a)(2)<br><br>Receipt of Child Pornography | Guilty Plea<br>Guidelines: 97-121 Months<br>OL: 30<br>CHC: I<br><br>Gov't requested "significant custodial | 60 Months BOP, 10 years SR<br><br>Below GL Sentence |

| | | | | |
|---|---|---|---|---|
| | | | sentence," 10 years SR. | |
| **FERNANDEZ, Jose Juan** | 1:11CR229 JCC | 18 U.S.C 2252(a)(2) 18 U.S.C. 2252(b)(1)<br><br>Receipt of Child Pornography | Guilty Plea Guidelines: 51-63 OL: 24 CHC: I<br><br>Gov't requested a "significant term of prison" and 10 years SR. | 60 Months BOP,  10 yrs SR |
| **HORNIMAN, William** | 1:13CR380 LMB | 18 U.S.C 2252(a)(2)<br><br>Receipt of Child Pornography | Guilty Plea Guidelines: 121-151 Months BOP OL: 32 CHC: I<br><br>Gov't requested sentence at bottom of the guideline range + lifetime SR. | 60mos BOP, 5 years SR<br><br>Below GL Sentence |
| **JANSSEN, Christopher** | 1:14CR139 TSE | 18 U.S.C 2252(a)(2)<br><br>Receipt of Child Pornography | Guilty Plea Guidelines: 151-188 Months OL: 34 CHC: I<br><br>Gov't requested sentence at low end of the guideline range based on calculation of 97-121 months + 10 yrs SR. | 60 months BOP, 15 years SR<br><br>Below GL Sentence |
| **JONES, Jason Waynes** | 1:09CR470 LMB | 18 U.S.C 2252(a)(2)<br><br>Receipt of Child Pornography | Guilty plea Guidelines: 97-121 Months OL: 30 CHC: I<br><br>Gov't requested 60 months BOP. | 60 Months BOP, 5 years SR<br><br>Below GL sentence. |

| | | | | |
|---|---|---|---|---|
| **KING, Matthew** | 1:08CR128 LMB | 18 U.S.C. 2252A(a)(2)(A)<br><br>Distribution of Child Pornography | Guilty Plea<br>Guidelines: 87-108 Months<br>OL: 29<br>CHC: I<br><br>Gov't requested sentence within guidelines range. | 60 Months BOP, 10 yrs SR<br><br>Below GL Sentence |
| **LATHAM, Mike** | 1:11CR215 JCC | 18 U.S.C. 2252(a)(2) 2252(b)(1) 2256(8)(A)<br><br>Receipt of Child Pornography | Guilty Plea<br>Guidelines: 51-63 Months<br>OL: 24<br>CHC: I<br><br>Gov't requested "significant term of imprisonment" and 10 yrs SR | 60 Months BOP, 10 yrs SR |
| **MCCLELLAN, John** | 1:15CR182 GBL | 18 U.S.C. 2252(A)(2)<br><br>Receipt of Child Pornography | Guilty Plea<br>Guidelines: 121-151 Months<br>OL: 32<br>CHC: I<br><br>Gov't requested sentence at low-end of guidelines range + 20 yrs SR | 60 Months BOP, 5 yrs SR<br><br>Below GL Sentence |
| **MCCLESKEY, Michael** | 1:11CR0483 AJT | 18 U.S.C. 2252A(a)(2)(A) 18 U.S.C. 2252(b)<br><br>Receipt of Child Pornography | Guilty Plea<br>Guidelines: 97-121<br>OL: 30<br>CHC: I<br><br>Gov't requested a sentence to the low end of the guidelines. | 60 Months BOP, 5 yrs SR<br><br>Below GL Sentence |
| **PARMETER, Brett** | 1:12CR189 LMB | 18 U.S.C 2252(a)(2)<br><br>Receipt of Child Pornography | Guilty Plea<br>Guidelines: 97-121 Months<br>OL: 30<br>CHC: I | 60 Months BOP, 5 Years SR<br><br>Below GL Sentence |

| | | | Gov't requested guidelines sentence. | |
|---|---|---|---|---|
| **ROBINSON, Richard** | 1:15CR329 LMB | 18 U.S.C 2252(a)(2)<br><br>Receipt of Child Pornography | Guilty Plea<br>Guidelines: 97-121 Months<br>OL: 30<br>CHC: I<br><br>Gov't requested sentence at low end of the guideline range and 20 yrs SR. | 60 Months BOP, 5 years SR<br><br>Below GL Sentence |
| **RUSSEL, Rodney** | 1:14CR336 GBL | 18 U.S.C 2252(a)(2)<br><br>Receipt of Child Pornography | Guilty Plea<br>Guidelines: 97-121 Months<br>OL: 30<br>CHC: I<br><br>Gov't requested sentence at low end of the guideline range. | 60 Months BOP, 5 years SR<br><br>Below GL Sentence |
| **SHAH, Milap** | 1:14CR282 AJT | 18 U.S.C 2252(a)(2)<br><br>Receipt of Child Pornography | Guilty Plea<br>Guidelines: 97-121 Months<br>OL: 30<br>CHC: I<br><br>Gov't requested sentence at low end of the guideline range + 5 yrs SR in sentencing memo, but sentencing minutes state Gov't finds 60 mths to be appropriate sentence. | 60 Months BOP, 5 years SR<br><br>Below GL Sentence |
| **SHUFFIELD, Phillip Daniel** | 1:09CR403 JCC | 18 U.S.C 2252(a)(2) and 2256(8)(A)<br><br>Receipt of Child | Guilty plea<br>Guidelines: 97-121 Months<br>OL: 30<br>CHC: I | 60 Months BOP, 10 yrs SR<br><br>Below GL sentence. |

28

| | | | | |
|---|---|---|---|---|
| | | Pornography | Gov't requested 109 months followed by 10 years SR. | |
| **SMITH, Matthew W.** | 1:08CR9 JCC | 18 U.S.C. 2252A(a)(2) and 18 U.S.C. 2256(8)(A)<br><br>Receipt of Child Pornography | Guilty Plea Guidelines: 60-63 Months OL: 26 CHC: II<br><br>Gov't requested 60 months + 10 yrs SR. | 60 months BOP, 10 yrs SR |
| **STEARNS, Scott Allen** | 1:13CR219 AJT | 18 U.S.C 2252(a)(2)<br><br>Receipt of Child Pornography | Guilty Plea Guidelines: 63-78 Months OL: 26 CHC: I<br><br>Gov't requested sentence at low end of the guideline range. | 60 Months BOP, 7 years SR<br><br>Below GL Sentence |
| **TRUJILLO, Jeremiah** | 1:13CR479 TSE | Distribution of Child Pornography<br><br>***Knowingly distributed CP to a 16 year old boy*** | Guilty plea Guidelines: 63-78 Months OL: 26 CHC: I<br><br>Gov't requested 63-78 months BOP and 10 years SR in sentencing memo, sentencing minutes say 72 mths. | 60 Months BOP, 10 years SR<br><br>Below GL sentence. |

While each case is unique, when considered as a whole, the above cases, and the sentences imposed therein, support the mandatory minimum sentence of 60 months for Mr. Thornton.  In comparing the severity of the misconduct and the defendants' histories, a sentence of 60 months in this case avoids any unwarranted sentencing disparities in accordance with § 3553(a).

29

**D.     The Need To Protect the Public, Promote Respect for the Law, and Provide Just Punishment and Deterrence**

A sentence of 60 months is an incredibly severe sentence, particularly for someone like Mr. Thornton.  Mr. Thornton has never been in any type of trouble before, let alone prison.  Now he is a convicted felon, will spend *years* in prison, and be on the sex offender registry for a decade and a half.  He lost his job, and any future ability to gain meaningful employment.  He lost his family.  He likely will not see his children for at least the next five years, and his marriage is ruined.  These are all consequences Mr. Thornton now has as a result of his offense.  They bear a heavy permanence and make 60 months incarceration more than sufficient to protect the public, promote respect for the law, and provide just punishment and deterrence.  However, as his letter to the Court show, Mr. Thornton has strong, supportive family and friends, who have remained by him through this process and will continue to assist them however they can.  This support will help Mr. Thornton's continued success in treatment, and ultimately his transition back into society as a law-abiding, contributing citizen.

There is no question that receiving and viewing child pornography is a serious offense and harmful to the victims, and Mr. Thornton has expressed heartfelt remorse for his conduct.  As he detailed in his letter to the Court, he has given much thought to his crime and now realizes the extent to which he was hurting all of the victims by viewing child pornography.  *See* Defendant's Letter attached as Exhibit 1.  His letter reflects an honest and determined intent not to re-offend. *Id*.  Importantly, Dr. Weiner also concludes that Mr. Thornton "has made robust and steady progress…He accepts his need for treatment, and is committed to completing his treatment in a positive and effective manner.").

30

Furthermore, the drastic difference between past sentences and the minimum incarceration for current crime is significant and will provide an effective deterrence from the commission of future offenses. As the Second Circuit noted, a defendant who has previously been sentenced to minimal incarceration, might very well be deterred by a lesser amount of incarceration than someone who has shown themselves to be undeterred by a lengthy sentence. *See United States of America v. Mishoe*, 241 F.3d 214, 220 (2d Cir. 2001).  As Dr. Weiner importantly wrote, Mr. Thornton "has come a long way in developing the insight and knowledge that his actions were egregious, and not in keeping with the man that he says he wants to be. He recognizes that he needs to change and has been diligent in working in treatment to become an honorable man who no longer lives a double life involving any form of pornography."  *See* Def.'s Ex. 4 at 3.

31

## CONCLUSION

For the reasons set forth above, Mr. Thornton respectfully requests that the Court impose a sentence of no more than 60 months of imprisonment with a post-release supervision term of 5 years.  Mr. Thornton further requests that the Court recommend that he be designated to FCI Petersburg so that he can be close to his family.  He finally further requests that the Court allow him to self-surrender given his successful compliance with the terms of his release, and that the Court recommend the Residential Drug Abuse Program based on his past history of alcohol abuse.

Respectfully submitted,
SETH AARON THORNTON
By counsel

_____/s/_____
Jessica N. Carmichael, Esq.
Virginia Bar No. 78339
HARRIS, CARMICHAEL, & ELLIS, PLLC
1800 Diagonal Road, Suite 600
Alexandria, Virginia 22314
(703) 684-7908
jcarmichael@harriscarmichael.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of March 2017, I will electronically file the foregoing pleading with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Maya Song, Esq.
US Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
703-299-3700
maya.song@usdoj.gov

James E. Burke
US Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
703-299-3700
james.e.burke@usdoj.gov


_____/s/_____
Jessica N. Carmichael, Esq.

33