IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 1:16-CR-246 |
| v. | ) | |
| | ) | Hon. Claude M. Hilton |
| SETH AARON THORNTON, | ) | |
| | ) | Sentencing: March 24, 2017 |
| Defendant. | ) | |

## **GOVERNMENT'S POSITION ON SENTENCING**

For at least 12 years, defendant Seth Thornton visited depraved corners of the Internet to hunt for images and videos of young girls being sexually exploited and abused. While simultaneously enjoying a "picturesque" life with the hallmarks of success, defendant subscribed to Internet newsgroups that catered to pedophiles and downloaded thousands of child exploitation videos from peer-to-peer networks. Defendant mostly sought illegal images that featured female victims between the ages of 8 and 14, though some victims were as young as 5 years old. As defendant has admitted, some of the sexually exploitative videos he chose to download featured sadistic, masochistic, or other violent imagery.

Defendant has pleaded guilty to one count of receipt of child pornography under 18 U.S.C. § 2252(a)(2). As part of the plea agreement, the government has stipulated that defendant's Guidelines range is appropriately calculated at 97-121 months – which differs from the calculation in the Presentence Investigation Report (PSR) – and has further agreed to recommend a sentence at the low-end of the Guidelines.[1] Given the nature and circumstances of defendant's crimes, his history and characteristics, and the need for the sentence imposed to

---

[1] ECF No. 45, ¶¶ 67-68 (calculating defendant's range at 151-188 months).

reflect the seriousness of the offense, the government submits that a sentence at the low-end of the Guidelines range is sufficient but not greater than necessary to account for the sentencing factors in 18 U.S.C. § 3553.

The government further requests that the Court order a significant term of supervised release, which by law must be at least five years;[2] impose the mandatory $5,000 special assessment under the Justice for Victims of Trafficking Act of 2015;[3] and require defendant to pay restitution. The government will try to reach an agreed-upon restitution amount with defendant and the attorney for the victim seeking restitution, but in case no agreement can be reached the government submits an analysis in Part IV to serve as "guideposts for determining an amount that fits the offense." *Paroline v. United States*, 134 S. Ct. 1710, 1728 (2014).

## BACKGROUND

In October 2015, law enforcement executed a search warrant at defendant's home in McLean, Virginia, after determining that a networked computer in that location was making child pornography videos available over a peer-to-peer program. PSR ¶¶ 16-17. Those videos included ones titled "11yo Ann Holiday – Bluehotel 05 Fingered Try To Fuck," and "(Children-sf-1Man) Pthc – Georgia (10yr) Peach Tent In The Camping." Both of these videos showed adult males sexually abusing prepubescent females, including attempted penetration.[4]

Forensic analysis of the computers seized from defendant's home and car revealed that defendant had downloaded and saved tens of thousands of such exploitative images and videos, depicting real children. PSR at 7-9. These files typically showed girls aged 8 to 14 engaged in

---

[2] *See* 18 U.S.C. § 3583(k).

[3] Codified at 18 U.S.C. § 3014.

[4] PSR at 7-8, ECF No. 2 (Affidavit In Support of Complaint), ¶¶ 15-18.

sexual conduct, though many featured even younger children. PSR at 9. Some child exploitation files in defendant's collection depicted sadistic, masochistic, or other violent imagery. PSR at 7. Analysis also showed that defendant's sexual interest in young girls dated back to at least 2004, after he got married but before he chose to have children. In 2004, defendant received child pornography files through Internet newsgroups to which he subscribed. PSR at 8. Defendant also utilized the peer-to-peer network eDonkey2000 and its eMule program to download child pornography files from others. He found files on the network through search terms like "underage sex," "preteen," and "lolita." PSR at 7.

In October 2016, defendant was charged in a criminal complaint with receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2), and he was later indicted. PSR ¶¶ 1-2, 5. In January 2017, defendant pleaded guilty to one count of receipt of child pornography. PSR ¶ 7. The statutory penalties are a mandatory minimum of 5 years' imprisonment with a maximum term of 20 years' imprisonment; a maximum fine of $250,000; a special assessment of $100 and an additional mandatory special assessment of $5,000 under the Justice for Victims of Trafficking Act of 2015; full restitution; and 5 years to life of supervised release.

## SENTENCING ANALYSIS

The Court must consult both the Sentencing Guidelines and the sentencing factors in 18 U.S.C. § 3553(a) to determine the appropriate sentence for defendant's crime of knowing receipt of child pornography. Although the Sentencing Guidelines are advisory, district courts are required to "consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005). Under the required procedures, a "district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in

the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence."

*United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005) (citation omitted).

## I.     Sentencing Guidelines

The government and defendant have agreed that the following offense-level adjustments

apply in this case:

| Guideline | |
|---|---|
| Base offense level (Section 2G2.2(a)(2)) | 22 |
| Conduct limited to receipt or solicitation of child pornography and defendant did not intend to distribute (Section 2G2.2(b)(1)) | -2 |
| Material involved a prepubescent minor or a minor who was younger than 12 years old (Section 2G2.2(b)(2)) | +2 |
| Offense involved material that portrays sadistic conduct or other depictions of violence (Section 2G2.2(b)(4)) | +4 |
| Offense involved the use of a computer for the possession, transmission, or receipt of the material (Section 2G2.2(b)(6)) | +2 |
| Offense involved 600 or more images (Section 2G2.2(b)(7)(D)) | +5 |
| Acceptance of responsibility (Section 3E1.1) | -3 |
| **TOTAL OFFENSE LEVEL** | **30** |

PSR ¶ 9. In addition to the two-point downward adjustment to defendant's offense level for

acceptance of responsibility under U.S.S.G. § 3E1.1(a), the government now moves for the

additional one-point decrease to defendant's offense level under § 3E1.1(b).  As reflected in the

chart above, the government and defendant agree that defendant's adjusted offense level is 30.

The defendant is in Criminal History Category I (PSR ¶ 44), resulting in a stipulated Guidelines

range of 97-121 months.  PSR at 22.

To remain consistent with its obligations under the plea agreement, the government declines to endorse the PSR's assessment of a two-level enhancement to defendant's offense level under § 2G2.2(b)(3)(F).[5] Section 2G2.2(b)(3)(F) applies if the evidence shows that defendant "knowingly engaged in distribution" of the child exploitation material. *Id.* The Fourth Circuit has further explained that the subsection applies "when a defendant knowingly permits others to access and retrieve child pornography files in the defendant's possession." *United States v. McManus*, 734 F. 315, 319 (4th Cir. 2013). Here, evidence exists that defendant did the opposite – he deliberately moved files that he downloaded from eMule to a non-networked, non-shared folder, thereby rendering those files inaccessible to others on the network. PSR ¶ 18.

To the extent defendant quibbles with the Guidelines' offense-level adjustments for child exploitation crimes, the government notes that the U.S. Sentencing Commission has repeatedly declined to amend those adjustments that the parties have agreed to. Most recently, in May 2016, the Commission submitted proposed Guidelines amendments to Congress that included proposed changes to Section 2G2.2. *See* http://www. ussc.gov/guidelines/amendments/reader-friendly-version-amendments-effective-november-1-2016.[6] Despite recommending changes to other specific offense characteristics under Section 2G2.2, the Commission decided to leave intact each of the adjustments that apply to defendant (including the two-level enhancement for use of a computer). In other words, after a thorough review of the Guidelines, the Commission determined in its expertise that the § 2G2.2 adjustments applicable to defendant are sufficiently supported that they should remain unchanged. The Court should therefore give them the same weight and consideration it has historically accorded them.

---

[5] *See* PSR ¶ 29.

[6] The Guidelines amendments became effective on November 1, 2016. *Id.*

## II.    Section 3553 Factors

The Section 3553 factors that the Court must consider in determining defendant's

sentence for his child pornography crimes underscore the need for a significant sentence in this

case. These factors include the nature and circumstances of the offense; the history and

characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of

the offense, to promote respect for the law, and to provide just punishment for the offense; and

the need to avoid unwarranted sentence disparities among defendants with similar records who

have been found guilty of similar conduct. *Id.*

It is beyond dispute that child pornography trafficking crimes like defendant's are

grievous offenses that deserve serious sanctions. *See United States v. Morace*, 594 F.3d 340, 350

(4th Cir. 2010) (citing "ample evidence of Congress's intent that offenses involving child

pornography be treated severely"). Such crimes inherently involve the sexual abuse and

exploitation of children. Indeed, far from being victimless, child pornography trafficking crimes

result in perpetual harm to the victim: "It is well established that children featured in child

pornography are harmed by the continuing dissemination and possession of that pornography.

Such images are 'a permanent record of the children's participation and the harm to the child is

exacerbated by their circulation.'" *United States v. Burgess*, 684 F.3d 445, 459 (4th Cir. 2012)

(quoting *New York v. Ferber*, 458 U.S. 747, 759)).

The statements submitted by the victim of the Vicky video series illustrate the harms

caused by defendant's crimes. Vicky writes that she lives daily with "the horrible knowledge that

many people somewhere are watching the most terrifying moments of my life and taking

grotesque pleasure in them." PSR at 56. "[P]eople" – like defendant – "are trading and sharing

videos of me as a little girl being raped in the most sadistic ways. They don't know me, but they

6

have seen every part of me. They are being entertained by my shame and pain." *Id.* Vicky

continues: "My world came crashing down the day I learned that pictures of me being sexually

abused had been circulated on the Internet." *Id.* She describes the continuous medical and

psychological harm she has suffered as a result of the trafficking and viewing of the videos. PSR

at 57-58. Her husband has also submitted a statement, dated November 2016 and titled "Letter to

Defendant from Vicky's Husband," that describes the profound and continuing impact of

defendant's crimes. PSR at 63-64.

Child pornography trafficking crimes also fuel a market for child sexual abuse. "Because

child pornography promotes the victimization of children, individuals like [defendant] create a

demand for its further production and abuse of children, even if their conduct is purely

voyeuristic." *United States v. Regan*, 627 F.3d 1348, 1355 (10th Cir. 2010) (affirming 97-month

sentence for child pornography receipt offense). Here, defendant was an active participant in the

child pornography market for at least 12 years, in the course of which he downloaded tens of

thousands of images and videos of victims being sexually exploited and abused. The volume of

images in his possession, including the images of sadistic and masochistic conduct, increase the

seriousness of defendant's offense. Indeed, through his participation in this market, defendant

helped validate and normalize the sexual exploitation of children, including very young children.

Applying the section 3553 factors, this Court has previously imposed significant

sentences on defendants like Seth Thornton. In *United States v. Harryman*, No. 1:14-CR-235-

CMH (E.D. Va.), for example, the defendant pleaded guilty to one count of receipt of child

pornography under 18 U.S.C. § 2252(a)(2), like defendant Thornton. Harryman's offense level

under the Guidelines was 32 with a corresponding range of 121-151 months. The Court imposed

a 120-month sentence.[7] Statistics from fiscal year 2011 show that while the average national sentence for non-production child pornography crimes was about 95 months, the average in the Fourth Circuit was higher, at 100.43 months. *United States v. Midgett*, No. 2:15-CR-114, 2016 WL 542141, at *2 (E.D. Va. Feb. 9, 2016) (imposing 99-month sentence on defendant convicted of child pornography distribution). For these reasons, the government submits that a sentence at the low end of the properly calculated guidelines in this case would sufficiently account for the statutory factors, without being greater than necessary.

### III.    Mandatory $5,000 Assessment under Justice for Victims of Trafficking Act

Because defendant is not indigent, he must be ordered to pay a $5,000 special assessment under the Justice for Victims of Trafficking Act of 2015, 18 U.S.C. § 3014. That law established a mandatory assessment of $5,000 on any non-indigent person convicted of an offense under certain enumerated statutes, including defendant's count of conviction: receipt of child pornography. *See* 18 U.S.C. § 3014(a)(3) (assessment applies to convictions under title 18, chapter 110, relating to sexual exploitation and other abuse of children). This assessment is payable after the defendant has satisfied all outstanding court-ordered fines, orders of restitution, and any other obligation related to victim compensation. *See id.* § 3014(b). In his plea agreement, defendant agreed to pay this mandatory $5,000 assessment. *See* ECF No. 37 (Plea Agreement) ¶ 8. As there is no dispute that defendant is not indigent, this $5,000 assessment must be imposed as part of defendant's sentence.

### IV.    Restitution

To date, the government is aware of one victim – from the "Vicky" series – who has submitted a restitution claim in this case for $10,000.  PSR ¶ 21.  In addition to being agreed

---

[7] *Id.*, ECF No. 27 (Judgment).

upon by the parties (see PSR at 5), restitution is required in this case because defendant's actions caused cognizable damages under federal law.[8]  In particular, defendant is required under 18 U.S.C. § 2259 to contribute to the "general losses" caused to his victims by the continued traffic in their sexual abuse images, "in an amount comporting with the defendant's relative role in the causal process underlying the victim's general losses."  *Paroline v. United States*, 134 S. Ct. 1710, 1727 (2014) (holding that defendants in child pornography crimes are liable for their own conduct in restitution to victims under 18 U.S.C. §2259).

The government and the victim's attorney will attempt to reach an agreement with defendant about the restitution to be ordered in this case.  In case the parties are unable to reach agreement, the government provides the following analysis to serve as "guideposts for determining an amount that fits the offense" (*Paroline*, 134 S. Ct. at 1728), and requests additional time if necessary – and as agreed to in the plea agreement – to finalize restitution.

In this case, the victim of the Vicky series has requested $10,000 restitution.  PSR at 42.[9] The attorney who represents the victim has also requested attorney's fees under 18 U.S.C. § 2259(b)(3)(E). In determining the appropriate restitution amounts, the Court may consider (1) the number of past criminal defendants found to have contributed to the victim's general losses; (2) reasonable predictions of the number of future defendants; (3) any available and reasonably reliable estimate of the broader number of offenders; (4) whether the defendant

---

[8] 18 U.S.C. § 2259 provides for mandatory restitution for victims of certain child exploitation offenses, including defendant's crimes.  Restitution is required for the "full amount of the victim's losses," including "(A) medical services relating to physical, psychiatric, or psychological care; (B) physical and occupational therapy or rehabilitation; (C) necessary transportation, temporary housing, and child care expenses; (D) lost income; (E) attorneys' fees, as well as other costs incurred; and (F) any other losses suffered by the victim as a proximate result of the offense."  *Id.* § 2259(b)(3).

[9] ECF No. 43.

distributed the images; (5) whether he contributed to their original production; (6) how many images he possessed; and (7) "other facts relevant to the defendant's relative causal role." *Paroline*, 134 S. Ct. at 1728. The district court may also consider the amount of "restitution sought and ordered in other cases." *Id.* at 1729.

In this case, reports from the National Center for Missing & Exploited Children (NCMEC) indicate that defendant downloaded and possessed 3 videos from the Vicky series. As demonstrated by the information provided by the victims' attorney, the victim in this series has an outstanding loss caused by the continuing traffic in their images. PSR at 43-49. There is no indication that defendant distributed these images, or that they were accessed by others. The government does not have complete statistics on the number of past or future offenders who were either caught and convicted or who will be caught and convicted for crimes contributing to this victim's general losses. Nor does the government have a reliable estimate of the broader number of offenders who will never be caught. The victim's attorney indicates that Vicky has received 884 restitution orders, of which 707 defendants have actually made some payment. PSR at 51.

Data self-reported by Department of Justice attorneys shows that the victim has received an average restitution award of $15,700, including a $10,000 award last month from this District in *United States v. Schroeder*, 1:16-CR-242-TSE.[10] *See also United States v. Reynolds*, No. 12-CR-20843, 2014 WL 4187936 (E.D. Mich. August 22, 2014) (awarding $15,500.00 award for nineteen images and no videos of Vicky); *United States v. Watkins*, No. 2:13-CR-268, 2014 WL 3966381 (E.D. Cal. Aug.13, 2014) (awarding $2,191.74 where no evidence was presented of how many Vicky images and videos the defendant received); *United States v. Hernandez*, No.

---

[10] *See Schroeder*, ECF No. 41 at 5 (Judgment); ECF No. 44 (list of victims awarded restitution).

2:11-CR-26, 2014 WL 2930798 (E.D. Cal. June 26, 2014) (awarding $2,282 .86 where one video of Vicky was found on defendant's computer).

With the above data serving as "guideposts," the government requests restitution in a reasonable, not nominal, amount comporting with defendant's relative role in the causal process and in consideration of the request made by the victim of the Vicky series.

## CONCLUSION

For the reasons stated above, the government submits that a sentence at the low-end of the properly calculated Guidelines is sufficient but not greater than necessary to satisfy the sentencing factors in Section 3553. The government recommends that defendant be designated to a Bureau of Prisons facility that offers sex offender treatment. Defendant's sentence should include the mandatory $5,000 assessment under 18 U.S.C. § 3014, a significant term of supervised release (no less than 5 years), and reasonable restitution.

Respectfully submitted,

Dana J. Boente
United States Attorney

By: _____/s/_____
Maya D. Song
Assistant United States Attorney
James E. Burke IV
Special Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
Ph: (703) 299-3700
Fax: (703) 299-3981
maya.song@usdoj.gov
james.e.burke@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2017, I will file the foregoing with the Clerk of Court

using the CM/ECF system, which will automatically generate a Notice of Electronic Filing

(NEF) to counsel of record.

By: _____/s/_____

Maya D. Song
Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
Ph: (703) 299-3700
Fax: (703) 299-3981
Email: maya.song@usdoj.gov